# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: March 30, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * | | |
| MARY MULLINS, on behalf of K.M., | * | UNPUBLISHED |
| Petitioner, | * | No. 19-320V |
| v. | * | Special Master Dorsey |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | Interim Attorney's Fees and Costs. |
| Respondent. | * | |
| * * * * * * * * * * * * | | |

Brian L. Cinelli, Schiffmacher Cinelli Adoff LLP, Buffalo, NY, for Petitioner.
Lynn Christina Schlie, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING INTERIM ATTORNEY'S FEES AND COSTS**[1]

On February 28, 2019, Mary Mullins ("Petitioner"), on behalf of K.M., filed a petition in the National Vaccine Injury Program[2] alleging that K.M. suffered acute disseminated encephalomyelitis ("ADEM") or "other demyelinating disorder/inflammatory response, seizure disorder, and other sequalae" as a result of receiving a haemophilius influenzae type B ("Hib 4") vaccine and/or a pneumococcal conjugate ("PCV 3") vaccine on February 29, 2016. Petition at Preamble (ECF No. 1).

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012) ("Vaccine Act" or "the Act"). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

1

On October 29, 2022, Petitioner filed a motion for interim attorney's fees and costs, requesting compensation for the attorney and paralegals who worked on her case. Petitioner's Motion for Interim Costs and Attorneys' Fees ("Pet. Mot."), filed Oct. 29, 2022 (ECF No. 79). Petitioner's request can be summarized as follows:

**Attorney's Fees** – $62,356.00
**Attorney's Costs –** $257,664.72

Petitioner thus requests a total of $320,020.72.[3] Respondent filed a response on November 3, 2022, stating that "[R]espondent defers to the Court to determine whether or not [P]etitioner has met the legal standard for an interim fees and costs award" and "defers to the Court regarding whether the statutory requirements for an award of attorney's fees and costs are met in this case." Respondent's Response to Pet. Mot. ("Resp. Response"), filed Nov. 3, 2022, at 2 (ECF No. 80).

This matter is now ripe for adjudication. For the reasons discussed below, the undersigned **GRANTS IN PART** Petitioner's motion and awards $228,258.31 in attorney's fees and costs.

I.    DISCUSSION

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. § 15(e)(1). When compensation is not awarded, the special master "may" award reasonable fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. If a special master has not yet determined entitlement, she may still award attorneys' fees and costs on an interim basis. Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008). Such awards "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." Id. Similarly, it is proper for a special master to award interim fees and costs "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim." Shaw v. Sec'y of Health & Hum. Servs., 609 F.3d 1372, 1375 (Fed. Cir. 2010).

The claim appears at this point to have been brought in good faith and built on a reasonable basis. Moreover, the undersigned finds that an award of interim attorney's fees and costs is appropriate here where there are significant fees and costs to be paid.

A.    **Reasonable Attorneys' Fees**

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera, 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by

---

[3] The undersigned calculated Petitioner's total request as $320,020.72, not the amount Petitioner stated in the motion, which was $320,123.72. Pet. Mot. at 9.

2

'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings.  Id. at 1348.

      Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service.  See Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316-18 (2008).  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."  Id. at 1522.  Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by Respondent and without providing Petitioner notice and opportunity to respond.  See Sabella v. Sec'y of Health & Hum. Servs., 86 Fed. Cl. 201, 209 (2009).

      A special master need not engage in a line-by-line analysis of Petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 719, 729(Fed. Cl. 2011).  Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended.  Wasson v. Sec'y of Health & Hum. Servs., 24 Cl. Ct. 482, 484 (Fed. Cl. Nov. 19, 1991), rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993).  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  Saxton, 3 F.3d at 1521.

      Here, Petitioner requests the following hourly rates for the attorney and paralegals who worked on this matter:

**Brian L. Cinelli – Attorney**
    2016: $275.00
    2017-2021: $300.00
    2022: $325.00

**Paralegals**
    2016-2021: $110.00
    2022: $125.00

      The undersigned finds that the requested rates are reasonable and in accordance with what this attorney and paralegals have previously been awarded for their Vaccine Program work.  See, e.g., Condara v. Sec'y of Health & Hum. Servs., No. 17-977V, 2021 WL 6338397, at *2 (Fed. Cl. Spec. Mstr. Dec. 20, 2022) (awarding Mr. Cinelli's rates for 2016-2021); Scheyder ex rel. J.H.S. v. Sec'y of Health & Hum. Servs., No. 19-580V, 2022 WL 905894, at *2 (Fed. Cl. Spec. Mstr. Feb. 24, 2022) (awarding Mr. Cinelli's rates for 2017-2021); Antkowiak v. Sec'y of Health & Hum. Servs., No. 20-1404V, 2022 WL 4078666 (Fed. Cl. Spec. Mstr. Aug. 5, 2022)

(awarding Mr. Cinelli's rates for 2022). The undersigned will therefore award the rates requested.

The undersigned has reviewed the submitted billing entries and finds a small change necessary. On July 3, 2022, "NGC," who normally billed at a paralegal rate, billed at Mr. Cinelli's attorney rate. Pet. Mot., Exhibit ("Ex.") 2 at 19. This results in a reduction of $40.00.[4] Additionally, on October 14, 2022, Mr. Cinelli billed at his 2021 rate of $300.00 instead of his 2022 rate of $325.00. Id. at 21. This results in an additional $90.00.[5] Thus, the undersigned awards Petitioner attorney's fees of $62,406.00, $50.00 more than the requested $62,356.00.

### B.      Attorneys' Costs

In total, Petitioner requests $257,664.72 for costs, which includes $10,756.72 for her attorney's miscellaneous costs, $229,308.00 for Dr. Shuman, and $17,600.00 for Dr. Steinman.

Petitioner requests $10,756.72 for miscellaneous costs, including obtaining medical records, Fed Ex costs, the filing fee, and two retainer fees for her experts. The undersigned finds these costs reasonable. However, documentation was not provided for postage and delivery.[6] This results in a reduction of $89.21.

Dr. Steinman billed 38 hours at a rate of $550.00 per hour, minus the retainer fee of $3,300.00, for a total of $17,600.00 for time spent reviewing medical records, medical research, correspondence, and preparing his expert report. Pet. Mot., Ex. 10. Recently, the undersigned found Dr. Steinman's requested rate of $550.00 to be reasonable. See Le v. Sec'y of Health & Hum. Servs., No. 16-1078V, 2023 WL 2054467, *4 (Fed. Cl. Spec. Mstr. Feb. 17, 2023) (finding Dr. Steinman's requested rate of $550.00 reasonable given his expertise and experience in the Vaccine Program). As such, she will award this cost in full.

Dr. Shuman billed 583.27 hours at a rate of $400.000 per hour, minus the retainer fee of $4,000.00, for a total of $229,308.00 for time spent reviewing medical records, medical research, correspondence, and preparing his three expert reports. Pet. Mot., Ex. 6. The undersigned finds Dr. Shuman's hourly rate reasonable and consistent with what Dr. Shuman has previously been awarded in other Vaccine Program cases. See, e.g., Scheyder, 2022 WL 905894, at *3; Sharpe v. Sec'y of Health & Hum. Servs., No. 14-065V, 2018 WL 3990867, *3 (Fed. Cl. Spec. Mstr. July 6, 2018). However, she finds a reduction necessary due to the excessive amount of time billed, vague entries, and block billing.

With regard to his first invoice, Dr. Shuman billed 316.27 hours, totaling $122,508.00 minus the retainer fee, for what appears to be for work done on Dr. Shuman's first expert report.

---

[4] ($325.00 - $125.00) x 0.2 hours = $40.00.

[5] ($325.00 - $300.00) x 3.6 hours = $90.00.

[6] Petitioner may re-request these costs in her final fees motion along with documentation.

Pet. Mot., Ex. 6 at 1-2. The undersigned finds Dr. Shuman's entries excessive, vague, and confusing.

First, it appears Dr. Shuman spent around 180 hours[7] reviewing medical records and preparing a chronology in this case, which encompassed over 100 pages of his first expert report. Pet. Mot., Ex. 6 at 1-2; see Pet. Ex. 26. Although there are many medical records in this case, the undersigned finds this excessive. Counsel argues "the amount of time spent was reasonable and necessary given the nature and severity of [K.M.'s] injuries," "the complexity of the case, [and] the voluminous medical records[] [and] imaging." Pet. Mot. at 6. However, Petitioner's other expert, Dr. Steinman, spent only 10 hours reviewing the medical records and expert reports from Dr. Shuman and Respondent's experts before he began drafting his report. Pet. Mot., Ex. 10 at 1; Pet. Ex. 29 at 4. In the undersigned's experience, Dr. Steinman's time for these tasks is reasonable. In contrast, Dr. Shuman's time spent reviewing records and preparing a chronology is not reasonable. Dr. Shuman's chronology consists of what appears to be a recitation of K.M.'s medical records that is overinclusive, as it includes factual information that is routine and thus, it is not tailored to the issues in the case. Although the medicine in this case is complex, a chronology that exceeds 100 pages is simply not useful.

Second, over 50 hours were billed for time spent on what may be medical research. Pet. Mot., Ex. 6 at 2. However, these billing entries are vague, duplicative, and excessive. For example, on June 8, 2020, 6.75 hours were billed for "Armague, Peds ADEM & Mog, Lancet, Hacohen, Probstel, Walters, deBruiya, Hennes, Balmann." Id. It is not clear what Dr. Shuman did during these 6.75 hours. On June 7 and June 9, 2020, Dr. Shuman billed a total of 5.50 hours for Wegener and Panzer bibliography. Id. Again, the entry is vague. According to his reference list, there is only one article authored by "Wegener-Panzer," and it is 10 pages in length. Pet. Ex. 26 at 123; Pet. Ex. 26-46. It is not clear why Dr. Shuman would need 5.50 hours to read and include this article in his reference list, especially since the article was not highlighted or discussed in his expert report. See Pet. Ex. 26, 26-46. And on June 10, 2020, Dr. Shuman again billed for "deBruiyn," "Panzer," and "Hacoben," articles he had already billed for. Pet. Mot., Ex. 6 at 2.

Third, because so many entries are vague, the undersigned finds it difficult to discern and evaluate what Dr. Shuman did during his time spent on this case. For example, on June 19, 2020, Dr. Shuman spent 6.25 hours on "add data on PANS/PANDAS." Pet. Mot., Ex. 6 at 2. However, in his first expert report, there are only two sentences—which appear to be almost identical—about PANS/PANDAS. See Pet. Ex. 26 at 25, 226. Additionally, on July 3, 2020, 14.50 hours were billed for "Prep and send CD-ROMs for court; Chronology arguments on PCV13Ags, CRM197." Id. Because of block billing, it is not clear how much time Dr. Shuman spent putting his references on a CD. Regardless, this is administrative type work, and the time is excessive.

---

[7] The undersigned acknowledges that the exact number of hours spent reviewing K.M.'s medical history and preparing the chronology is not clear as many entries are difficult to understand and evaluate.

In his second invoice, which appears to be for work related to two expert reports, Dr. Shuman billed a total of 267 hours, totaling $106,800.00. Pet. Mot., Ex. 6 at 4-5; see Pet. Exs. 30-31. Again, the undersigned finds these entries vague, confusing, and excessive.

For example, on May 10, 2021, Dr. Shuman billed 5 hours for separating Respondent's references. Pet. Mot., Ex. 6 at 4. The nature of the work done is unclear. On May 18, 2021, Dr. Shuman billed 15 hours for "Adamovic; Marchiono; Alvord; Dale; Berzero; DeSena." Id. On June 11, 2021, Dr. Shuman billed 4 hours for "Hacohen" and "Armangue." Id. The next day, June 12, he billed 5.25 hours on "Tituher 2013; Bibliography." Id. at 5. Then on June 14, he billed 9.75 hours on "Mader on C5; Bennetto 2004; Huynh 2008 on Vx ADEM; Hacohen x3." Id. These entries appear to be references to medical articles. Even though some of these articles were discussed by Dr. Shuman in his expert reports, the undersigned finds the time exceedingly excessive. Moreover, the entries are so vague that it is difficult to evaluate what was done during this time. Lastly, both responsive expert reports discuss some of the same articles. Thus, this time appears duplicative.

These issues are not new to Dr. Shuman, as his billing hours and entries have previously been found to be excessive, vague, and constitute block billing. See, e.g., Sims ex rel. A.E.S. v. Sec'y of Health & Hum. Servs., No. 15-1526V, 2023 WL 2234265, *5-8 (Fed. Cl. Spec. Mstr. Feb. 27, 2023) (finding it was "unreasonable and unnecessary" for Dr. Shuman to bill 785 hours, including "an extraordinary amount of time" completing tasks such as reviewing medical literature, and reducing his hours by 40%); Sharpe, 2018 WL 3990867, *3 (finding Dr. Shuman billed hours to be "undoubtedly [] large" and reducing his award for entries that were "impermissibly vague and thus constitute block billing"); Loving v. Sec'y of Health & Human Servs., No. 02-469V, 2015 WL 10579257, at *13-16 (Fed. Cl. Spec. Mstr. Dec. 15, 2015) (reducing Dr. Shuman's fee by one-third for poor item descriptions, redundant research work, and administrative tasks); Scheyder, 2022 WL 905894, at *3.

Further, the undersigned recently found Dr. Shuman's entries to constitute block billing, to be vague in nature, and overall excessive. Baker ex rel. C.B. v. Sec'y of Health & Hum. Servs., No. 19-1327V, 2022 WL 3715873, *3-4 (Fed. Cl. Spec. Mstr. Aug. 4, 2022). In that case, Dr. Shuman billed 284.34 hours for work related to one expert report, totaling $114,536.00. Id. at *3.

Due to the extreme nature of the amount of excessive billing, vague entries, block billing, and the fact that Dr. Shuman has repeatedly submitted bills with the same problems, and thus, has been put on notice of these problems, the undersigned finds a reduction of 40% reasonable and necessary  This results in a reduction of $91,723.20.[8]

---

[8] $229,308.00 x 0.4 = $91,723.20.

6

## II.     CONCLUSION

Based on all of the above, the undersigned finds that it is reasonable to compensate Petitioner and her attorney as follows:

| | |
|---|---|
| Requested Attorney's Fees: | $ 62,356.00 |
| Reduction of Attorney's Fees: | + ($ 50.00) |
| Awarded Attorney's Fees: | $ 62,406.00 |
| | |
| Requested Attorney's Costs: | $ 257,664.72 |
| Reduction of Attorney's Costs: | - ($ 91,812.41) |
| Awarded Attorney's Costs: | $ 165,852.31 |
| **Total Interim Attorney's Fees and Costs:** | **$ 228,258.31** |

**Accordingly, the undersigned awards:**

**A lump sum in the amount of $228,258.31, representing reimbursement for reasonable interim attorney's fees and costs, in the form of a check payable jointly to Petitioner and Petitioner's counsel of record, Mr. Cinelli.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.[9]

**IT IS SO ORDERED.**

/s/ Nora Beth Dorsey
Nora Beth Dorsey
Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.